a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RONNIE W. YORK,                    CIVIL ACTION NO. 5:17-CV-223-P
Petitioner

VERSUS                            JUDGE ELIZABETH E. FOOTE

DARREL VANNOY,                    MAGISTRATE JUDGE PEREZ-MONTES
Respondent

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) and Supplemental Petition (Doc. 15) filed by pro se Petitioner Ronnie W. York ("York") (#600116). York is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. York challenges his convictions of aggravated rape and attempted aggravated rape, and the sentences imposed, in the First Judicial District Court, Caddo Parish.

Because York's claims are either procedurally defaulted or meritless, his Petition and Supplemental Petition (Docs. 1, 15) should be DENIED and DISMISSED WITH PREJUDICE.

## I.    Background

York was convicted of attempted aggravated rape of his mentally handicapped sister-in-law and aggravated rape of his five-year-old daughter.  See State v. York, 48,230 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1226, 1228.  York was sentenced to fifty

years of imprisonment for the attempted aggravated rape conviction, to run consecutively to a mandatory life sentence on the aggravated rape conviction.  See id.

On appeal, York alleged that the trial court erred by: (1) denying his motion for post-verdict judgment of acquittal due to insufficient evidence to support a conviction on either count; (2) denying his motion for new trial on grounds that the verdict was contrary to the law and evidence because the state had failed to prove all the essential elements of the crimes; (3) allowing the introduction of an interview of his daughter; (4) transferring the case to another division for trial over York's objection; (5) denying York's motion to sever; (6) allowing the state to make prejudicial and sympathetic statements against York in its opening and closing statements, as well as misstatements of the testimony; (7) allowing a state witness to read verbatim from the transcript of a victim's statement that was not introduced into evidence; and (8) by denying York's motion to reconsider sentence and rendering an excessive sentence against him.  Id.  The appellate court affirmed the conviction and sentence on August 7, 2013.  See id.

York sought writs in the Louisiana Supreme Court, which were denied on March 21, 2014.  State v. York, 2013-2154 (La. 3/21/14), 135 So. 3d 617.  York did not seek review in the United States Supreme Court, so his conviction became final under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, on June 19, 2014, 90 days after the Louisiana Supreme Court denied writs.

York filed an application for post-conviction relief on February 18, 2015.  See State ex rel. York v. State, 2015-1775 (La. 5/22/15), 206 So. 3d 184.  York alleged that

the trial court erred in determining that the two victims were competent to testify, and counsel was ineffective in failing to file a motion to determine the competency of the two victims.  See id. at 186.  York also alleged that his attorney was ineffective for failing to fully and sufficiently cross-examine the two victims regarding prior statements.  See id. at 186.  Next, York alleged that he and his attorney were at "serious odds" and had an "irreconcilable conflict."  See id. at 187.  York also claimed that the trial court failed to properly charge the jury on circumstantial evidence.  See id. at 188.  Finally, York alleged that his counsel was ineffective "for all the reasons previously cited."  See id. at 188.  York's application was denied on May 22, 2015.  See id. at 188.

York sought writs in the Louisiana Second Circuit Court of Appeal, which were denied. York filed a writ application in the Louisiana Supreme Court, as well as a motion to stay the application while he sought review of an additional issue in the lower courts. See State ex rel. York v. State, 2015-1775 (La. 5/22/15), 206 So. 3d 184. The motion and application were denied on November 15, 2016.  See id.

## II.   Law and Analysis

### A.    Rule 8(a) Resolution

The Court is able to resolve York's § 2254 Petition without the necessity of an evidentiary hearing because there are no genuine issues of material fact relevant to York's claims, and the state court records provide an adequate factual basis.  See Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### B.    Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determinations made by the trial judge.  See Davis v. Ayala, 135 S. Ct. 2187, 2202 (2015) (citing Harrington v. Richter, 562 U.S. 86, 102–03 (2011)).

Under § 2254 and the AEDPA, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885 (2001).

Therefore, § 2254(d) demands an initial inquiry into whether a prisoner's claim has been "adjudicated on the merits" in state court; if it has, the AEDPA's highly deferential standards apply.  See Davis, 135 S. Ct. at 2198 (citing Richter, 562 U.S. at 103).

When a federal claim has been presented to a state court and the state court has summarily denied relief without a statement of reasons, it may be presumed that the state court adjudicated the claim on the merits, in the absence of any indication or state law procedural principles to the contrary. Richter, 562 U.S. at 99. A habeas court must determine what arguments or theories supported, or could have supported, the state court's decision, and then, whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Richter, 562 U.S. at 102. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing there was no reasonable basis for the state court to deny relief. Richter, 562 U.S. at 98.

Pursuant to the AEDPA, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). See Martin, 246 F.3d at 475-76.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. See Martin, 246 F.3d at 476; see also Rivera v. Quarterman, 505 F.3d 349, 356 (5th Cir. 2007), cert. den., 555 U.S. 827 (2008).

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. See Martin, 246 F.3d at 476. An unreasonable application is different from an incorrect one. See Bell v. Cone, 535 U.S. 685, 694 (2002). When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. See Mitchell v. Esparza, 540 U.S. 12, 18 (2003); see also Davis, 135 S. Ct. at 2199 (citing Fry v. Pliler, 551 U.S. 112, 119 (2007)).

## C.    Timeliness and Exhaustion

The threshold questions on habeas review under the AEDPA are whether a petition is timely and whether the claims raised by a petitioner were adjudicated on the merits in state court; the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

 "A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)). A federal habeas petition should generally be dismissed if state remedies have not been exhausted as to all of the federal court claims.

Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20.

The test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. Whitehead, 157 F.3d at 387 (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the state's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id., 157 F.3d at 387 (citing Nobles, 127 F.3d at 420); Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, or to have raise the claims in only the highest state court, but not the lower courts. See Baldwin v. Reese, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. Id.; 541 U.S. at 32.

If a claim has not been adjudicated on the merits in state court, federal review of that claim may be barred by the doctrine of procedural default if the petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  See Cone v. Bell, 556 U.S. 449, 465 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting Coleman v. Thompson, 501 U.S. 722, 732 (1991)).  When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims.  See Coleman, 501 U.S. at 722.  "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas" review.  Id. at 735 n. 1.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts.  Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998) (citing Coleman, 501 U.S. at 731–33 and Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995)); Fuller v. Johnson, 158 F.3d 903, 905–06 (5th Cir. 1998).  In such a case, there is no difference between non-exhaustion and procedural default. Magouirk, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court

remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed.  Id.

Respondent concedes that York's Petition was timely filed.  (Doc. 21-1, p. 12).  However, as Respondent points out, some of York's claims are procedurally defaulted.

**D.    There was no unreasonable application of federal law as to York's insufficient evidence claims.**

In his first two claims, York alleges there was insufficient evidence to convict him of attempted aggravated rape of his "mentally retarded former sister-n-law," Y.P., and aggravated rape of his daughter, R.Y.  State v. York, 48,230 (La. App. 2 Cir. 8/7/13); 121 So.3d 1226, 1228, writ denied, 2013-2154 (La. 3/21/14); 135 So.3d 617.  York cites Jackson v. Virginia, 443 U.S. 307 (1979), in support of his claim.  York presented the sufficiency of the evidence claim to all levels of the state courts through direct appeal to the Second Circuit Court of Appeal and his application for supervisory relief to the Louisiana Supreme Court.  Thus, this claim was exhausted for purposes of federal habeas review.  (Doc. 22-2, p. 153).

Claims of insufficient evidence present a mixed question of law and fact.  Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008).  The Court must give deference to the state court's findings unless the decision was contrary to or involved an unreasonable application of Supreme Court law.  See Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is set forth in Jackson, which was relied on by the state appellate court.  Jackson requires a court to determine whether, after viewing the record and the evidence in the light

9

most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319; <u>Perez</u>, 529 F.3d at 594; <u>Williams v. Cain</u>, 408 F. App'x 817, 821 (5th Cir. 2011).

A court's consideration of the sufficiency of the evidence extends only to what was presented at trial. <u>See</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting <u>Jackson</u>, 443 U.S. at 324) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial"). A review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see also</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Therefore, a reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (1995) (citing <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, a court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U.S. at 324 n.16).

The Second Circuit Court of Appeal was the highest state court to issue a reasoned opinion on this issue. Therefore, this Court must look through the Louisiana Supreme Court's summary denial of the Second Circuit's reasoning. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); York, 121 So. 3d at 1228.

On appeal, York complained that the state did not present sufficient evidence to prove any sexual contact occurred between himself and Y.P., nor did it prove her mental infirmity and the date of the alleged contact. York, 121 So. 3d at 1231.

Louisiana Revised Statute 14:42(A) states, in part:

> Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

La. R.S. 14:42(A). "Attempt" requires that a defendant have a "specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward accomplishing" the crime. La. R.S. 14:27(A).

According to the Louisiana Second Circuit Court of Appeal:

The facts adduced at trial revealed that Y.P. lives with her mother, and is the defendant's mentally retarded former sister-in-law who has suffered from mental illness the majority of her life. The incident occurred while the defendant was separated from his wife and children, who were also living in the home. Although the exact date of the offense was not ascertained, the evidence indicated that the offense occurred at the victim's mother's house.

…

Tiwana Page, the defendant's ex-wife and Y.P.'s sister, testified that she and her two daughters, R.Y., and L.Y. were living in the home of her mother, Gloria Page, in June of 2006. Her sister, Y.P., is mentally handicapped and also lives in the home.  Although she was separated from the defendant, by mutual agreement, the two children, R.Y. and L.Y., spent weekends with their father.  Ms. Page testified that some time after R.Y. reported the incident with her father to her around June 16, 2006, Y.P. told her and her mother that the defendant had performed oral sex on her.  She said her mother contacted the police.  She said that Y.P. could not tell them how many days, weeks, or months earlier that the incident occurred, but Ms. Page speculated that it was a few days.

Sergeant Paula Farquhar testified that she was employed by the Shreveport Police Department as a sex crimes unit investigator.  She had been investigating the incident involving R.Y. when on September 11, 2006, she received a complaint from Gloria Page regarding Y.P. Sergeant Farquhar was asked on cross-examination what Y.P. told her had happened.  Reading from a transcript of the interview, she said that [Y.P.] advised that Ronnie had licked her breast and felt and licked on her cat.... She advised me that he told her to go to Tiwana's room and close the door. He told her to lay down, and he pulled her pants down. She advised that just the head went in. He was hunching her and moving his pelvis. He told her to suck his thing. She said it happened at nighttime.

Sergeant Farquhar testified that she used anatomical drawings in which Y.P. identified her vagina as her "cat," and she drew a penis and showed where it was located on the defendant.

The court allowed the state to have Sgt. Farquhar read a transcript of her complete interview with Y.P. in which she related the entire incident including that the defendant had partially inserted his penis in her vagina.

Both Ms. Page and Sgt. Farquhar testified regarding Y.P.'s mental infirmity. Y.P. has always lived with her mother, Gloria Page. According to Ms. Page, Y.P. is unable to drive a car or manage money. She has worked the past 15 or 16 years for Frost Industries through the Caddo–Bossier Association for Retarded Citizens.  She said that although Y.P. was 34 at the time of the alleged crime, she had about the same mental state as her daughter R.Y., who was 5 years old at that time.  Sergeant Farquhar testified when she spoke with Y.P., it was apparent to her that Y.P. was not on a communication and thinking level appropriate to her age.

James Patterson, M.D., Ph.D., a psychiatrist employed by LSU Health Sciences Center in Shreveport, testified that he treated Y.P. from July 2005 to May of 2006.  He diagnosed her with schizophrenia and mild mental retardation ("MR").  Y.P. has had two cognitive IQ tests—one showing mild MR (mental retardation) and one showing mild to moderate MR—indicating an IQ in the 55 to 65 range. He estimated Y.P.'s mental age to be between 7 and 10 years old.  He stated that he did not believe Y.P. had the capacity to consent to sexual activity.

Y.P.'s mother, Gloria Page, testified that the defendant had come to her house to see his children R.Y. and L.Y. Tiwana was gone, but Y.P. was there.  After he left, she went to her room to sleep.  She later awoke and went to get a glass of water when she discovered that the defendant had returned.  He was in Tiwana's room with his infant daughter, L.Y.  Y.P. was sitting on the sofa.  Although she could not recall the date, she testified that she believed that this was when the defendant molested her daughter.

Y.P. testified at trial and identified the defendant as her sister Tiwana's ex-husband.  She affirmed that during the time period of February and March of 2006, the defendant came to the house while her mother was asleep.  She let him in the house.  She stated that he sucked her breasts and put his hand by her vagina.  She said that the defendant "made her suck his thing," and "I didn't do it."  He licked and kissed her "cat."  She testified that the defendant told her to go Tiwana's room, and he pulled her clothes down and spread her legs. She testified that the defendant put his tongue on her vagina and put the head of his private parts in her vagina.

Y.P. was not able to identify the exact month that the incident occurred. She acknowledged that it was some months after the incident occurred when she told her mother and Tiwana about it.

<u>York</u>, 121 So. 3d at 1228–29; 1231-32.

The appellate court further noted:

There is some inconsistency of the three accounts (Y.P.'s account, her mother's account, and her sister's account) concerning Y.P.'s reporting the incident and when the incident likely occurred, whether Y.P. volunteered the information or whether it was the result of questioning by her mother, whether the incident was reported in a phone conversation or at home, and whether Y.P. told her mother alone or both her mother and Tiwana at the same time. These are very minor areas of confusion, and in many instances they are attributable to the rather lengthy and confusing questions posed. They are not enough, when viewed in the light most favorable to the prosecution, to cast sufficient doubt on what Y.P. reported substantively about the incident. We also note that the witnesses were trying to recall events that happened years earlier. We conclude that the testimonial evidence adduced from Y.P., viewed in a light most favorable to the prosecution, was sufficient to that [sic] prove that sexual contact occurred.
…

Based on our review, we conclude that the uncertainty regarding an exact date of the offense is of no moment in this case. It is clear from the testimony that the offense occurred during the time that Y.P.'s sister, Tiwana Page, was separated from the defendant and living with Y.P. and her mother, Gloria Page. Y.P. was the victim of this crime, and, even considering her mental infirmity, her testimony was the least ambiguous, indicating that the incident occurred several months before she reported it to her mother. The date is not an element of the offense defined under La. R.S. 14:42(A)(6), and La. C. Cr. P. art. 468 does not require the date or time of the commission of the offense to be alleged in the indictment unless the date or time is essential to the offense. The indictment refers to February or March of 2006 as the time period of the offense, and we note that defendant's trial counsel never asked for a bill of particulars under La. C. Cr. P. art. 484.

The appellant also claims that the evidence did not establish that Y.P. was mentally infirm as required by the statute. We conclude that this assertion is without merit. The question is whether there was sufficient proof that her I.Q. was 70 or below. Dr. Patterson, who was accepted as an expert, testified without objection that two I.Q. tests done on Y.P. showed she had mild to moderate retardation and that her I.Q. range was 55 to 65. On appeal, appellate counsel speculates that because Dr. Patterson said there was I.Q. testing done in 1997, and that her average

14

I.Q. was 64.75 from three scores, one "can safely assume that some of her scores would have been above 64.75, possibly 70 or higher...." There is, however, no basis for this assumption. The overall I.Q. score was well below 70 and established by the evidence. This assignment is without merit.

Therefore, after considering the evidence under the <u>Jackson</u> standard for the sufficiency of the evidence to support the conviction of attempted aggravated rape of Y.P., the appellant has failed to show that the trial court erred in denying the defendant's motion for post verdict judgment of acquittal and motion for new trial."

<u>York</u>, 121 So. 3d at 1232-33.

Because the appellate court used the <u>Jackson</u> standard, York must show that the court's decision was "contrary to or involved an unreasonable application of" <u>Jackson</u>, or "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

York's argument as to the date of offense focuses on the discrepancy as to when the crime against Y.P. occurred. York asks this Court: "How can you possibly prepare a defense when you don't even know what year the crime is alleged to have occurred?" (Doc. 1-2, p. 18). York's argument has no bearing on the issue of the sufficiency of the evidence. Moreover, there was no issue at trial regarding the year in which the offense occurred. As the appellate court noted, the date is not an element that must be proven as part of the offense. <u>York</u>, 121 So. 3d at 1233. Thus, York has failed to show that the Second Circuit's ruling on this point met the standards set forth in § 2254 for habeas relief.

York's argument that the State failed to prove the element of mental infirmity is also baseless. La. R.S. 14:42(C)(2) defines "mental infirmity" as a person with an intelligence quotient of seventy or lower. La. R.S. 14:42(C)(2).

Dr. James Patterson, a psychiatrist and accepted psychiatric expert at trial, was Y.P.'s treating physician at the time of the incident. Dr. Patterson placed Y.P. in the mildly mentally retarded category and noted that her IQ average was 64.75 or 65. (Doc. 21-1, p. 193). Dr. Patterson testified that Y.P.'s intellectual functioning was "[d]efinitely childlike. I would say anywhere from 7 to 10 years old…." (Doc. 22-1, p. 190). Dr. Patterson opined that Y.P. "lacked the capacity to consent to sexual activity." (Doc. 22-1, p. 190). The jury had the opportunity to weigh the evidence of Y.P.'s mental deficits and the testimony of Dr. Patterson along with Y.P.'s testimony and the corroborating testimony of Y.P.'s other family members.

The denial of relief on the issue of the sufficiency of the evidence to convict Y.P. of attempted aggravated rape was neither contrary to nor an unreasonable application of Jackson. York is not entitled to relief on this issue.

Similarly, York cannot meet his burden as to the aggravated rape of his daughter, R.Y. According to Louisiana Revised Statute 14:42(A), aggravated rape is:

> Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

La. R.S. 14:42(A)(4).

York contends the evidence was insufficient to show that he engaged in anal intercourse with R.Y., who was 5 years old when the incident occurred.  York argues that the DVD interview of R.Y. does not establish that anal intercourse actually occurred, and R.Y.'s mother, when testifying at trial, did not initially recall telling police that R.Y. had told her that he had inserted his penis in her from the back.  (Doc. 1-2, pp. 21-22).  York argues that Tiwana Page had to refresh her recollection with a police report regarding the allegation of anal penetration.  (Doc. 1-2, pp. 21-22).  Therefore, York claims Tiwana Page's testimony does not support an allegation of anal sexual intercourse.  York argues that the pediatrician that examined R.Y. found no signs of injury.  (Doc. 1-2, p. 22).   York also claims that the interview of R.Y. by the social workers was unreliable.  (Doc. 1-2, p. 23).

York provides no support for his claim that Tiwana Page's testimony should be discredited because her memory had to be refreshed with a police report.  The pediatrician that examined R.Y. testified that the majority of children examined for sexual abuse have normal findings on exam.  (Doc. 22-1, p. 242).  The doctor noted that R.Y. had complained of burning with urination which could have been caused by irritated skin from anal intercourse.  (Doc. 22-1, p. 243).

In a recorded interview with a social worker, R.Y. stated that her father had: "put his tongue on my tongue and he put my tongue on his tongue;" "made me touch his thing"; and "made me get on top of him."  (Doc. 22, p. 40).   R.Y. also stated that York "had me put his thing behind me in my panties" and that his "thing" went in

her "butt." (Doc. 22, pp. 45-47). In court, R.Y. testified that everything she told the social worker on the video was true. (Doc. 22-2, p. 41).

The jury clearly found the testimony of R.Y. and Y.P. credible. These credibility determinations cannot be second-guessed by a federal habeas court. When reviewing a sufficiency-of-the-evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. See Jackson, 443 U.S. at 319; see also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review.").

When the evidence is viewed in the light most favorable to the prosecution, it cannot be said that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, York cannot show that the state court's decision rejecting his sufficiency of the evidence claims was contrary to or involved an unreasonable application of Jackson or any other federal law.

### E.    York failed to exhaust his claim regarding the admissibility of a video interview of R.Y.

York claims that the video of R.Y. should not have been admitted because some of R.Y.'s responses were inaudible. York does not present a federal constitutional claim to this Court regarding the video. Moreover, York did not identify a federal right in the state courts with respect to this claim, so the claim was not properly exhausted. See Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20. Because the time within which to file a post-conviction application has expired, York's claim is procedurally defaulted. York has not shown

cause or prejudice for this failure to exhaust state court remedies.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998).  Therefore, the claim should be dismissed.

### F.    York does not know entitlement to habeas relief for the transfer of his case to a different division for trial.

York claims that his right to a fair trial under Turner v. State of Louisiana, 379 U.S. 466 (1965) was violated when his case was reassigned to another division for trial.  (Doc. 1-2, p. 25).

Because of a backlog in the assigned division of the district court, a discussion was had regarding whether another judge could hear York's case, which was last on the docket.  (Doc. 22-1, p. 76).  York's counsel informed the court that York did not want to move the case before another judge and that she did not have her trial notebook.  (Doc. 22-1, p. 322).  The state responded that the case was the last on the docket because of alphabetized listing.  (Doc. 22-1, p. 73).  After a lunch recess, defense counsel responded: "Your Honor, I can go forward. It was dead last on the docket, I did not have my materials, I would prefer not to, but I can go forward."  (Doc. 22-1, p. 75).  The Court found that under Local Court Rule 14, cases may be temporarily reassigned for the purpose of any "proceeding, hearing, or trial by consent of the judges affected by the change."  (Doc. 22-1, p. 325).  The Court further noted that another judge was available and willing to hear the case.  (Doc. 22-1, p. 326).

In Turner, the Supreme Court held that a fair trial by an impartial jury in a fair tribunal is a basic requirement of due process.  Id. at 472 (citing In re Murchison, 349 U.S. 133, 136 (2010)).  York fails to show how the change of courtroom and

presiding judge had any effect on the impartiality of the jury or the fairness of the tribunal.

Moreover, the United States Court of Appeals for the Fifth Circuit has held that judges have "the inherent power to transfer cases from one to another for the expeditious administration of justice." United States v. Stone, 411 F.2d 597, 598-99 (5th Cir. 1969). Because there is no due process right to a particular judge or means of assignment, and because York cannot show prejudice from the reassignment, York cannot establish he is entitled to habeas relief.

G.   **York failed to exhaust his claim regarding joinder of the two rape charges.**

York complains about the joinder of the two rape charges. (Doc. 1-2, p. 29). York fails to state a federal basis for his claim. Because he did not alert the state courts to the federal nature of his claim, the joinder claim is not exhausted. Since the time for exhausting has expired, York's claim is procedurally defaulted. See Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20. York has not shown cause or prejudice for this failure to exhaust state court remedies. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998). York's claim regarding joinder should be dismissed.

H.   **York failed to exhaust his claim regarding prejudicial opening and closing arguments.**

York argues that statements made during opening and closing arguments were prejudicial. (Doc. 1-2, p. 34). York fails to identify a federal basis for his claim. Because he did not alert the state courts to the federal nature of his claim, the claim

is not exhausted.  Since the time for exhausting has expired, York's claim is procedurally defaulted.  <u>See</u>  <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); <u>Rose</u>, 455 U.S. at 519-20.  York has not shown cause or prejudice for this failure to exhaust state court remedies.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Alexander v. Johnson</u>, 163 F.3d 906, 908 (5th Cir. 1998).  York's claim regarding opening and closing arguments should be dismissed.

### I.     <u>York failed to exhaust his hearsay claim.</u>

York argues that Sgt. Farquhar's reading from a transcript of Y.P.'s tape-recorded statement on redirect was inadmissible hearsay.  (Doc. 1-2, p. 37).  York fails to identify a federal basis for his claim.  Because he did not alert the state courts to the federal nature of his claim, the claim is not exhausted.  Since the time for exhausting has expired under La. C. Cr. P. art. 930.8, York's claim is procedurally defaulted.  <u>See</u>  <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); <u>Rose</u>, 455 U.S. at 519-20.  York has not shown cause or prejudice for this failure to exhaust state court remedies.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Alexander v. Johnson</u>, 163 F.3d 906, 908 (5th Cir. 1998).  York's claim regarding hearsay should be dismissed.

### J.     <u>York cannot establish his sentence is excessive in violation of federal law.</u>

York complains that his sentence is excessive in violation of Louisiana law.  (Doc. 1-2, p. 38).  However, federal habeas corpus relief is available only to correct violations of federal constitutional law, not alleged errors of state law.  <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, a federal habeas court will

not review the legality of a petitioner's sentence under state law. See, e.g., Nyberg v. Cain, No. 15-cv-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, No. 13-cv-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, No. 12-cv-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

To the extent York claims his sentence is excessive under the Eighth Amendment to the United States Constitution, his claim is unexhausted. York did not alert the state courts to the federal nature of his claim. Since the time for exhausting has expired under La. C. Cr. P. art. 930.8, York's claim is procedurally defaulted. See Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20. York has not shown cause or prejudice for this failure to exhaust state court remedies. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998). York's excessive sentence claim should be dismissed.

Even if the Court was to review York's claim under the Eighth Amendment's prohibition against cruel and unusual punishment, despite York's failure to identify that amendment as the basis for his claim, the claim would fail. In the Fifth Circuit, excessive sentence claims are analyzed under the framework set forth in McGruder v. Puckett, 954 F.2d 313 (5th Cir. 1992). First, the court weighs the gravity of the offense against the severity of the sentence. Id. at 316. Then, if the court determines that the sentence is grossly disproportionate to the offense, it compares the sentence

in the instant case to sentences for similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. <u>Id.</u> If the court does not find that the sentence is grossly disproportionate to the offense, however, no further inquiry is required and the court instead "defer[s] to the will of" the legislature. <u>United States v. Gonzales</u>, 121 F.3d 928, 942–43 (5th Cir. 1997), <u>overruled in part on other grounds by United States v. O'Brien</u>, 560 U.S. 218 (2010). As the Supreme Court has noted, the disproportionality inquiry is inherently subjective. <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980). Outside of the capital punishment context, successful proportionality challenges are "exceedingly rare." <u>Id.</u>

York was sentenced to 50 years without benefit of parole, probation, or suspension of sentence for the attempted aggravated rape of Y.P., to run consecutively with the mandatory life sentence on the aggravated rape of R.Y. York's crimes were particularly serious, despite his claim that the facts show "at best that Mr. York performed oral sex on his mentally handicapped sister-in-law on one occasion and had inappropriate sexual contact with his five-year-old daughter, on one occasion, but no actual intercourse." (Doc. 1-2, p. 39). Where life sentences have been upheld for multiple offenders of non-violent crimes, a life sentence for aggravated rape of a five-year-old child is not disproportionate or excessive. <u>See Rummel</u>, 445 U.S. at 295; <u>Edwards v. Butler</u>, 882 F.2d 160, 167 (5th Cir. 1989) ("[L]ife without parole for aggravated rape under the Louisiana statute does not offend the eighth amendment proportionality analysis of <u>Solem v. Helm</u>, and Edwards' eighth amendment claim is meritless."). The concurrent sentence for the attempted

aggravated rape of York's mentally-disabled sister-in-law is likewise not so grossly disproportionate to the offense that this Court should intervene.  York's claim should be dismissed.

### K.   York fails to state a constitutional claim regarding the court's decision that R.Y. was competent to testify, or that counsel was ineffective for failing to file a motion to determine R.Y.'s competency.

York claims that: (1) the trial court erred in failing to determine whether R.Y. was competent to testify; and (2) trial counsel was ineffective for failing to file a motion to determine R.Y.'s competency.  (Doc. 1-2, p. 40).  As to R.Y.'s competency, York fails to identify a federal basis for his claim in the § 2254 Petition, and York failed to alert the state courts as to a federal basis for his claim.  Therefore, York's claim is not properly before this Court and is unexhausted.  Since the time for exhausting has expired under La. C. Cr. P. art. 930.8, York's claim is procedurally defaulted.  See Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20.  York has not shown cause or prejudice for this failure to exhaust state court remedies.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998).  York's claim regarding R.Y.'s competency should be dismissed.

Under Strickland v. Washington, 466 U.S. 668 (1984), a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. Id. at 687. The first prong does not

24

require perfect assistance by counsel; rather, a petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. Id. at 688. Judges have been cautioned towards deference in their review of attorney performance under Strickland claims in order to "eliminate the potential distorting effect of hindsight." Rector v. Johnson, 120 F.3d 551, 563 (5th Cir. 1997) (quoting Strickland, 466 U.S. at 689). Accordingly, courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In other words, the petitioner must show prejudice great enough to create a substantial—rather than conceivable—likelihood of a different result. See Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." Williams v. Stephens, 761 F.3d 561, 566–67 (5th Cir. 2014).

The trial court denied the ineffective assistance of counsel claim using the test from Strickland, finding that York had not shown that his counsel made errors so serious as to violate his Sixth Amendment right to counsel or that he was deprived of a fair trial. (Doc. 21-3, pp. 144-45). The Louisiana Supreme Court found that York failed to show the victims were not competent to testify, and attached a copy of the

district court's reasons and made them a part of its opinion.  (Doc. 22-4, pp. 178-183).  The trial court pointed out that R.Y. was questioned as to her address, educational history, and extracurricular activities, and defense counsel twice instructed R.Y. to state if she did not understand what was being asked of her.  (Doc. 22-4, p. 181).  The trial court found that, under <u>Strickland</u>,  York had not shown that his attorney made errors "so serious" that counsel was not functioning as guaranteed by the Sixth Amendment.  (Doc. 22-4, p. 181).

York has not provided this Court with supporting evidence or argument showing that the state courts' denial of relief resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1), (2).  Therefore, the claim should be dismissed.

### L.  <u>York fails to state a constitutional claim regarding the court's decision that Y.P. was competent to testify, or that counsel was ineffective for failing to file a motion to determine Y.P.'s competency.</u>

York claims that: (1) the trial court erred in failing to determine whether Y.P. was competent to testify; and (2) trial counsel was ineffective for failing to file a motion to determine Y.P.'s competency.  (Doc. 1-2, p. 42).  As to Y.P.'s competency, York fails to identify a federal basis for his claim in the § 2254 Petition, and York failed to alert the state courts as to a federal basis for his claim.  Therefore, York's claim is not properly before this Court and is unexhausted.  Since the time for

exhausting has expired under La. C. Cr. P. art. 930.8, York's claim is procedurally defaulted.  See  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20.  York has not shown cause or prejudice for this failure to exhaust state court remedies.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998).  York's claim regarding Y.P.'s competency should be dismissed.

The trial court denied the ineffective assistance of counsel claim using the test from Strickland, finding that York had not shown that his counsel made errors so serious as to violate his Sixth Amendment right to counsel or that he was deprived of a fair trial.  (Doc. 21-3, pp. 144-45).  The Louisiana Supreme Court found that York failed to show the victims were not competent to testify and attached a copy of the district court's reasons and made them a part of its opinion.  (Doc. 22-4, pp. 178-183).  The trial court pointed out that Y.P. was questioned as to her age, birthday, family history, educational history, and employment history.  Y.P. stated she knew the difference between a lie and the truth.  (Doc. 22-4, p. 181).  Under Strickland, the trial court found that York had not shown that his attorney made errors so serious that counsel was not functioning as guaranteed by the Sixth Amendment or that he was deprived of a fair trial.  (Doc. 22-4, p. 181).

York has not provided this Court with supporting evidence or argument showing that the state courts' denial of relief resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1), (2). Therefore, the claim should be dismissed.

**M.** **York fails to state a constitutional claim regarding the effectiveness of his attorney's cross-examination of R.Y. and Y.P.**

York alleges that his trial counsel rendered ineffective assistance by failing to adequately cross examine Y.P. and R.Y. as to inconsistencies between their earlier statements and trial testimony. (Doc. 1-2, p. 45). As to Y.P., York focuses particularly on the uncertainty of the date of offense. As to R.Y., York focuses on some confusion regarding details of the offense.

Referring to the opinion of the Second Circuit Court of Appeals on direct review, the trial court stated that "the uncertainty regarding an exact date of the offense is of no moment in this case." (Doc. 22-4, p. 182). The trial court analyzed the claim under Strickland and found that York had not demonstrated counsel committed any error or that he was prejudiced such that he was deprived of a fair trial. (Doc. 22-4, p. 182).

York has not provided this Court with supporting evidence or argument showing that the state courts' denial of relief resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1), (2). Therefore, the claim should be dismissed.

28

**N.** **York cannot show he was denied effective assistance of counsel due to conflict with his attorney or his attorney's failure to call an expert psychologist.**

York alleges he was denied effective assistance due to a conflict between himself and his attorney.  (Doc. 1-2, p. 48).  York asserts that his attorney failed to file unspecified pretrial motions, failed to interview unnamed witnesses, failed to visit him in jail or provide him with discovery, and did not share the theory of defense with him.  (Doc. 1-2, pp. 48-49).

In its Ruling denying York's Application for Post-Conviction Relief, the trial court addressed this claim as follows:

> Petitioner has again failed to demonstrate meet [sic] his burden under <u>Strickland</u>.  The Petitioner has neither identified the alleged witness nor shown how their testimony would have changed the outcome of the trial. The Petitioner also has not shown how his attorney was "placed in a situation inherently conducive to divided loyalties."

(Doc. 22-4, p. 182).  As noted by the state courts, York's conclusory allegations fail to substantiate his claim.  York provides no proof that his trial counsel performed, or failed to perform, any of the listed acts.  Further, York has failed to show that her strategic decisions were ineffective or that different tactics would have resulted in a different outcome at trial.  Finally, York has failed to show how the state courts' decisions were an unreasonable application of the <u>Strickland</u> test or an unreasonable determination of the facts. York's claim should be dismissed.

In a Supplemental Petition under § 2254, York argues that his attorney was ineffective for failing to call a psychological expert on child sexual abuse.  (Doc. 15).  York did not raise this claim in the state courts, so the claim is unexhausted.  Since

29

the time for exhausting has expired under La. C. Cr. P. art. 930.8, York's claim is procedurally defaulted.  See  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A)); Rose, 455 U.S. at 519-20.  York has not shown cause or prejudice for this failure to exhaust state court remedies.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998).  The claim raised in York's Supplemental Petition (Doc. 15) should be dismissed.

    O.    **York cannot show he was denied due process by the court's failure to charge the jury on standards for evaluating circumstantial evidence or that he was denied effective assistance of counsel by his attorney's failure to object.**

York alleges that his Fourteenth Amendment right to a due process was violated when the trial court failed to charge the jury on the standards for evaluating circumstantial evidence.  York also alleges that his trial counsel was ineffective for failing to object to the lack of such a charge.  (Doc. 1-2, p. 51).

Even if the charge was incorrect, improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  In examining habeas claims of improper jury instructions, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." Galvan v. Cockrell, 293 F.3d 760, 764 (5th Cir. 2002) (citing Sullivan v. Blackburn, 804 F.2d 885, 887 (5th Cir. 1986)).  The relevant inquiry is whether the failure to give an instruction "'by itself so infected the entire trial that the resulting conviction violates due process.'"  Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Moreover, there is a strong presumption that errors in jury instructions are subject

to a harmless error analysis.  Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623-24 (1993).

As the trial court noted, the exact charge given to the jury has been upheld as "neither misleading nor an incorrect statement of the law." (Doc. 22-4, p. 183).  York cannot show there was any error in the instruction.  Moreover, the strongest evidence against York was not circumstantial, but direct testimony from the two victims. Because York cannot show constitutional error in the instruction, he cannot meet the <u>Strickland</u> standard as to his attorney's alleged ineffectiveness for failing to object to the instruction.  The claim should be dismissed.

III.    <u>Conclusion</u>

Because York's claims are either procedurally defaulted or meritless, IT IS RECOMMENDED that the Petition and Supplemental Petition (Docs. 1, 15) be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have 14 calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within 14 days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___1st___ day of May, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge